IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CV-492-FL

| | |
|---|---|
| BRIAN BAUER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CHARTER SCHOOLS USA, INC., ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion to dismiss (DE 10), pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been briefed fully and the issues raised are ripe for ruling. For the following reasons, the motion is granted in part and denied in remaining part as moot.

## STATEMENT OF THE CASE

Plaintiff commenced this action against defendant, his former employer, on October 29, 2021, in Wake County Superior Court, asserting claims for wrongful discharge in violation of the public policy of North Carolina and breach of implied covenant of good faith and fair dealing. Plaintiff seeks actual damages, interest, and costs.

Defendant removed the action to this court on the basis of diversity jurisdiction and filed the instant motion to dismiss for failure to state a claim upon which relief can be granted. Plaintiff noticed a voluntary dismissal of his claim for breach of implied covenant of good faith and fair

dealing,[1] and he responded in opposition to the remainder of defendant's motion pertaining to wrongful discharge.

## STATEMENT OF FACTS

The facts alleged may be summarized as follows. Plaintiff is a citizen and resident of Johnston County, North Carolina, and defendant is a Delaware corporation engaged in the business of administering and operating charter schools. "At all times relevant to this litigation, [d]efendant was operating Cardinal Charter Academy, located at 1020 St. Charles Place in Cary, North Carolina." (Compl. (DE 1-3) ¶ 6). "On or about July 12, 2021, [d]efendant hired [plaintiff] to serve as School Principal for Cardinal Charter Academy." (Id. ¶ 7). "In taking the position as School Principal, [plaintiff] relocated himself and his family from Charlotte, North Carolina to Johnston County." (Id. ¶ 8).

"Plaintiff started as School Principal at Cardinal Charter Academy on or about August 31, 2021." (Id. ¶ 9). "Upon taking the position, [p]laintiff learned that there were more than 20 vacant staff positions at Cardinal Charter Academy due to actions by the prior school administration." (Id. ¶ 10). "Within 45 days of his hiring, [p]laintiff had hired 22 new staff, eight of whom were African American." (Id. ¶ 11).

According to the complaint, "[w]hile North Carolina's public policy is to 'protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap,' the Board for Cardinal Charter Academy disapproved of Plaintiff's diverse hiring practices." (Id. ¶ 12). "At least one member of the Cardinal Charter Academy Board explicitly stated her disapproval of the hiring practices to [p]laintiff." (Id. ¶ 13). This alleged "disapproval

---

[1] Because of plaintiff's voluntary dismissal, defendant's motion as it pertains to plaintiff's breach of implied covenant of good faith and fair dealing is denied as moot.

2

of [p]laintiff's diverse hiring practices was also expressed by [d]efendant's North Carolina State Director, Maggie Nampon." (Id. ¶ 14).

"During [p]laintiff's employment as School Principal, he also helped to author the school's Reopening Plan which included, in part, a school-wide mask mandate among school staff." (Id. ¶ 15). "Cardinal Charter Academy's Reopening Plan was drafted, in part, to bring the school into compliance with the StrongSchoolsNC guidelines issued by the North Carolina Department of Health and Human Services." (Id. ¶ 16). "Specifically, as part of Cardinal Charter Academy's 2020-2021 "Reopening Plan," the school required 'all persons on campus to wear masks that meet school mask requirements at all times . . . Employees may remove cloth face coverings indoors only when working alone in a classroom or office.'" (Id. ¶ 17). Cardinal Charter Academy's rules for mask wearing allegedly "were consistent with the Wake County Public School System's rules regarding the subject." (Id. ¶ 18).

"On or about July 30, 2021, the North Carolina Department of Health and Human Services issued interim guidance regarding the wearing of masks by school personnel." (Id. ¶ 19). "Pursuant to the 'StrongSchoolsNC Public Health Toolkit (K-l2),' the North Carolina Department of Health and Human Services stated that 'All schools should require all children and staff in schools K-12th grade to wear face coverings consistently when indoors.'" (Id. ¶ 20).

"Upon taking the position as School Principal, [p]laintiff observed that a large number of his staff were disregarding the school, county, and state's rules regarding the wearing of masks." (Id. ¶ 21). "Following this observation, on or about August 20, 2021, [p]laintiff held a meeting during which he castigated the staff to achieve their compliance with the mask mandate." (Id. ¶ 22). "Cardinal Charter Academy's Reopening Plan also instituted protocols that required the quarantining of students in certain circumstances." (Id. ¶ 23). "After the school year began,

[p]laintiff began enforcing the Reopening Plan, including the quarantine requirements." (Id. ¶ 24). "Plaintiff received complaints from school parents regarding the Reopening Plan's quarantine provisions, including from members of the school's board whose children had been required to quarantine." (Id. ¶ 25).

"On or about September 2, 2021, [d]efendant fired [p]laintiff." (Id. ¶ 26). "Defendant's decision to fire [p]laintiff came without any warning." (Id. ¶ 27). "Plaintiff has been unable to find new employment since his sudden firing." (Id. ¶ 28).

## COURT'S DISCUSSION

A.    Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[2]

B.    Analysis

Defendant argues that plaintiff's wrongful discharge claim fails as a matter of law because plaintiff does not allege a violation of North Carolina public policy. The court agrees.

---

2    Internal citations and quotation marks are omitted from all citations unless otherwise specified.

4

"An employer wrongfully discharges an at-will employee if the termination is done for [1] an unlawful reason or [2] purpose that contravenes public policy." Garner v. Rentenbach Constructors Inc., 350 N.C. 567, 571 (1999). "[T]he public-policy exception was designed to vindicate the rights of employees fired for reasons offensive to the public policy of this State." Id. "In order to support a claim for wrongful discharge of an at-will employee, the termination itself must be motivated by an unlawful reason or purpose that is against public policy." Id.

"Although the definition of 'public policy' approved by [the North Carolina Supreme Court] does not include a laundry list of what is or is not 'injurious to the public or against the public good,' at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." Amos v. Oakdale Knitting Co., 331 N.C. 348, 353 (1992) (quoting Coman v. Thomas Manufacturing Co., 325 N.C. 172, 175 (1989)); see Whiting v. Wolfson Casing Corp., 173 N.C. App. 218, 222 (2005) ("The public policy exception to the at-will employment doctrine is confined to the express statements contained within our General Statutes or our Constitution.").

In addition, "sitting in diversity, a federal court should not create or expand a State's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007). "[A]bsent a strong countervailing federal interest, the federal court should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law." Id.

In this case, plaintiff identifies in his complaint two sources for a violation of public policy:1) the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.2, and 2) guidelines of the North Carolina Department of Health and Human Services. The court addresses each in turn below.

5

1. NCEEPA

In pertinent part, NCEEPA provides:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143-422.2(a). While NCEEPA refers to "discrimination or abridgement on account of "race," it does not cover claims based upon "retaliation" or "harassment." McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir. 2003); Whitt v. Harris Teeter, Inc., 359 N.C. 625 (2005) (same, applied to retaliation and hostile work environment); see Jones v. Duke Energy Corp., 43 F. App'x 599, 600 (4th Cir. 2002) (stating that the court declines "to expand the provisions of the NCEEPA" beyond its plain terms).

Here, plaintiff does not allege facts permitting an inference that defendant deprived plaintiff the right or opportunity to seek, obtain or hold employment without discrimination on account of his race. He claims, rather, that he was terminated because of "his hiring of racially diverse staff." (See Compl. ¶ 32). Such a claim, however, is more attenuated than a claim of retaliation under NCEEPA. Where NCEEPA does not create a claim based on retaliation for opposition to discriminatory practices, then it follows that it does not establish a claim based on retaliation for promoting practices that are beneficial to members of a protected class.

Plaintiff argues that he does not assert a "retaliation" claim, but rather an "associational discrimination claim[.]" (Pl's Opp. (DE 15) at 5). Regardless of the label plaintiff seeks to place on his claim, however, it is akin to a retaliation claim, in that plaintiff is not targeted allegedly because of his own race but rather for the race of others whom he supported. In any event, NCEEPA does not reference a public policy based upon "association" with others of different races. Moreover, neither the North Carolina Supreme Court nor the North Carolina Court of

6

Case 5:21-cv-00492-FL   Document 17   Filed 07/13/22   Page 6 of 11

Appeals has recognized a claim under NCEEPA based upon "associational discrimination," and no federal court applying North Carolina law has done so either. See, e.g., Sampson v. Leonard, No. 4:10-CV-121-D, 2012 WL 3822193, at *6 (E.D.N.C. Sept. 4, 2012) ("No North Carolina appellate court appears to have addressed whether discrimination due to an interracial relationship equates to race discrimination under section 143–422.2."). Even if such a theory of interpretation of NCEEPA is conceivable, this court cannot now be the first to so pronounce under the principle that this "court should not create or expand a State's public policy." Time Warner Ent.-Advance/Newhouse P'ship, 506 F.3d at 314.

Cases cited by plaintiff are inapposite. In Weidman v. Exxon Mobil Corp., 776 F.3d 214, 221 (4th Cir. 2015), the court recognized a wrongful discharge claim based on plaintiff's "refusing to participate in illegal pharmacy distribution activities." In the instant case, by contrast, plaintiff does not allege he was fired for refusing to participate in any illegal activities. In Hui Minn Lee v. Mkt. Am., Inc., No. 1:18CV1046, 2020 WL 1274226, at *8 (M.D.N.C. Mar. 17, 2020), and Jackson v. Weight Watchers Int'l, Inc., No. 3:10CV363, 2011 WL 1843223, at *4 (W.D.N.C. May 16, 2011), the courts recognized wrongful discharge claims based on the plaintiffs' own race, national origin, or age, whereas here, plaintiff does not allege discharge based on his own race, national origin, or age. Accordingly, those cases illustrate what is lacking in plaintiff's allegations.

Plaintiff argues that the court should "remand the case back to North Carolina court," in the event the court is unable to expand the state's public policy to encompass plaintiff's claim under NCEEPA, citing Willard v. Indus. Air, Inc., No. 1:20-CV-00823, 2021 WL 309116, at *1 (M.D.N.C. Jan. 29, 2021), as an example of this procedure. Willard, however, was not a case based on diversity jurisdiction, but rather one removed on the basis of federal question jurisdiction, where the federal claim then was dismissed as a matter of law. See id. at *1. The court had

7

jurisdiction over the state law claim solely by virtue of supplemental jurisdiction, under which 28 U.S.C. § 1367(c) provided a mechanism for remand. See id. * 7. There is no such applicable mechanism for remand in this case. Therefore, the dismissal rather than remand is required.

In sum, that part of plaintiff's wrongful discharge claim premised upon NCEEPA is dismissed as a matter of law.

2. North Carolina Department of Health and Human Services Guidelines

In his complaint, plaintiff asserts that the North Carolina Department of Health and Human Services has stated that "[a]ll schools should require all children and staff in schools K-12th grade to wear face coverings consistently when indoors." (Compl. ¶ 20). He also suggests that state guidelines set forth a policy to ensure that "all persons on campus to wear masks that meet school mask requirements at all times" and that "staying home when sick is essential to keep infections out of schools." (Id. ¶ 31). Guidelines promulgated by a state agency, however, are not North Carolina public policy because they are not "express policy declarations contained in the North Carolina General Statutes." Amos, 331 N.C. at 353; see Whiting v. Wolfson Casing Corp., 173 N.C. App. 218, 222 (2005). As a result, they cannot create public policy on which a wrongful discharge claim may be based. See id. Therefore, there is no actionable public policy basis for plaintiff's claim that he was wrongfully discharged for insisting on compliance with such guidelines.

In opposition to dismissal, plaintiff cites several other North Carolina Statutes that he contends set public policy in North Carolina. For example, plaintiff cites to N.C. Gen. Stat. § 130A-136, as requiring a principal "who has reason to suspect that a person within the school . . . has a communicable disease . . . [to] report information required by the Commission to the local health director of the county." Plaintiff also cites to N.C. Gen. Stat. § 115C-288(e), as requiring

a principal to "assign duties to teachers with regard to the general well-being and the medical care of students," and § 115C-307(b), which imposes a duty on all teachers to "promote the health of all pupils."

Application of these statutes to the alleged facts, however, is a stretch. These statutes set forth the powers and duties of principals and teachers, generally. For example, in context, § 115C-307(b) provides:

> It shall be the duty of all teachers, including student teachers, substitute teachers, voluntary teachers, and teacher assistants when given authority over some part of the school program by the principal or supervising teacher, to encourage temperance, morality, industry, and neatness; to promote the health of all pupils, especially of children in the first three grades, <u>by providing frequent periods of recreation, to supervise the play activities during recess, and to encourage wholesome exercises for all children</u>.

N.C. Gen. Stat. § 115C-307(b) (emphasis added). None of the aforementioned statutes require adherence to the "mask mandate" and the "quarantining of students" that plaintiff alleges he required prior to his termination. (Compl. ¶¶ 22-23). In any event, plaintiff has not identified North Carolina case law that has determined that these statutes establish the public policy of North Carolina regarding mask mandates and quarantining of students. To so hold here would amount to an expansion of the state's public policy and a federal court "elbow[ing] its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law." <u>Time Warner Ent.-Advance/Newhouse P'ship</u>, 506 F.3d at 314. This is especially the case where the executive order governing COVID-19 restrictions in July 2021 includes the caveat that it is "not intended to create . . . any individual right, privilege, or benefit, whether substantive or procedural at law or in equity by any party against . . . any other person." North Carolina Executive Order 224 (July 29, 2021) at Section 5.

Plaintiff argues that this case is analogous to <u>Deerman v. Beverly California Corp.</u>, 135 N.C. App. 1 (1999). <u>Deerman</u>, however, is instructively distinguishable. There, the court

9

concluded as follows: "If plaintiff, as alleged, was terminated for meeting <u>the minimum requirements of the practice of nursing</u> as established and <u>mandated by</u> the [Nursing Practice Act, N.C. Gen. Stat. § 90-171.20(7)] and regulations thereunder, then such termination violated the public policy of this state to ensure the public <u>a minimum level of safe nursing care</u>." <u>Id.</u> at 12 (emphasis added). The court noted that the Nursing Practice Act

> includes "teaching and counseling" as a function of the practice of nursing. See G.S. § 90–171.20(7). As such, <u>plaintiff was obligated</u> under the facts herein to provide "teaching and counseling" to her patient or the patient's family "regarding the client's health status and health care for the purpose of (A) increasing knowledge; (B) assisting the client to reach an optimum level of health functioning ...; [and] (D) making referrals to appropriate resources." Rule 36.0224(h).

<u>Id.</u> (emphasis added). The court determined that the statute and regulations cited "evidence a clear public policy in North Carolina to protect public safety and health by maintaining minimum standards of nursing care." <u>Id.</u> at 6. Accordingly, the court held that plaintiff stated a claim for wrongful discharge where she allegedly was terminated after "advis[ing] the family of a patient that they should consider changing physicians for the patient." <u>Id.</u> at 5-6.

In this case, by contrast, plaintiff has not alleged any actions he took prior to termination that similarly were <u>required</u> by public health statute and regulations. Indeed, plaintiff alleges that the North Carolina Department of Health and Human Services stated that "[a]ll schools <u>should require</u>" masks, not that they must require masks. (Compl. ¶ 20 (emphasis added)). Further, unlike the nurse in <u>Deerman</u>, plaintiff is not a licensed health care provider, and there is no practice of being a principal that is similar to the "practice of nursing," subject to "minimum standards of competency . . . to provide the public safe nursing care," as in <u>Deerman</u>. 135 N.C. App. at 8-9. Lastly, even if North Carolina public policy conceivably could be extended based upon the reasoning in <u>Deerman</u> to statements made in statutes governing duties and authorities of principals,

10

this court sitting in diversity is not in the position to extend public policy in this manner. See Time Warner Ent.-Advance/Newhouse P'ship, 506 F.3d at 314.

In sum, that part of plaintiff's claim for wrongful discharge in violation of public policy based upon Department of Health and Human Services guidelines fails as a matter of law.

## CONCLUSION

Based on the foregoing, defendant's motion (DE 11) is GRANTED IN PART and DENIED IN PART AS MOOT, as set forth herein. Plaintiff's claim for wrongful discharge is DISMISSED for failure to state a claim upon which relief can be granted. The clerk is DIRECTED to close this case.

SO ORDERED, this the 13th day of July, 2022.

LOUISE W. FLANAGAN
United States District Judge